FILED
MAY 3 1 2016
Clerk, U.S. District Court
District Of Montana
Billings

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| WENDELL PLENTYHAWK,<br><br>Plaintiff,<br><br>vs.<br><br>MANSOOR SHEIKH, M.D.,<br>FREDERICK FERGUSON, M.D.<br>UNITED STATES OF AMERICA,<br>and SOLIANT PHYSICIAN<br>STAFFING, LLC,<br><br>Defendants. | CV 14-44-BLG-SPW<br><br>OPINION and ORDER |

Before the Court is Defendants Dr. Mansoor Sheikh, Dr. Frederick Ferguson, and Soliant Physician Staffing, LLC's (collectively "Doctors") motion to strike Plaintiff Wendell Plentyhawk's supplemental expert reports. As discussed below, the Court agrees with the Doctors that Plentyhawk's supplemental expert reports run afoul of Fed. R. Civ. P. 26(e). However, the Court declines to strike the supplemental reports and instead imposes an alternative sanction.

1

## I. Background

Plentyhawk alleges that he is disabled due to the Doctors' negligence.[1] Pursuant to the Court's Scheduling Order, Plentyhawk's damages expert disclosures were due on October 20, 2015. The Court has not set a trial date.

Plentyhawk retained Reg Gibbs as an expert, and Gibbs prepared a document entitled "Preliminary Life Care Plan and Employability Assessment" ("2014 Life Care Plan"). Gibbs drafted the initial 50-page Life Care Plan on November 18, 2014. (Doc. 78-2 at 1-50.) Gibbs supplemented the 2014 Life Care Plan on January 21, 2015. (Doc. 78-2 at 51-56.) To assist in drafting the 2014 Life Care Plan, Gibbs asked physiatrist Dr. Bill Rosen to examine Plentyhawk. This was the only time that Dr. Rosen interacted with Plentyhawk. Plentyhawk also retained Dr. Ronald Dulaney as an economist. Dulaney used data from the 2014 Life Care Plan to draft his own expert report on February 6, 2015. (Doc. 78-4.) Plentyhawk timely disclosed Gibbs's and Dulaney's expert reports to the Doctors.

On February 29, 2016, and well past Plentyhawk's expert disclosure deadline, Gibbs drafted another Life Care Plan ("2016 Life Care Plan"). (Doc. 78-1.) Gibbs wrote that the 2016 Life Care Plan is intended to replace the 2014 Life

---

[1] Plentyhawk alleges that Defendant United States of America also acted negligently. The government has not taken a position on the Doctors' motion.

2

Care Plan. (*Id.* at 3.) The 2016 Life Care Plan largely replicates the 2014 Life Care Plan, but it contains several additions and corrections. Some of these additions and corrections contain information that was known by Plentyhawk prior to the October 2015 expert disclosure deadline. Some of the new information came from Dr. Rosen. Dr. Rosen did not see Plentyhawk again, but Dr. Rosen submitted to Gibbs revisions to a questionnaire originally completed after Plentyhawk's examination. (*Reg Gibbs Depo. 68:12-25 (March 9, 2016)*, Doc. 84-9 at 2.)

Specific additional information found in the 2016 Life Care Plan that Gibbs had access to prior to the expert disclosure deadline includes the claim that Plentyhawk has felt dizzy spells that he attributes to hypertension that he suspects developed after his discharge from a rehabilitation center in 2012. (Compare Doc. 78-1 at 22 with Doc. 78-2 at 20.) Also, the 2014 Life Care Plan contains a section entitled "Future Employment" that spans three-quarters of a page. (Doc. 78-2 at 41.) Gibbs expanded the "Future Employment" section to three and a half pages in the 2016 Life Care Plan, and Gibbs did not use any information that was previously unavailable. (Doc. 78-1 at 43-46.)

Some information was corrected. For example, in the 2014 Life Care Plan, Gibbs wrote that Plentyhawk took online university courses for two years and earned a 3.5 grade-point average. (Doc. 78-2 at 4.) However, this was not correct,

as Plentyhawk never followed through on his plan to enroll in online courses. (*Wendell Plentyhawk Depo. 68:11-21 (August 27, 2015)*, Doc. 92-1 at 3.) Plentyhawk obviously knew this portion of the 2014 Life Care Plan was incorrect when it was written, and he stated in his deposition taken in August 2015 that he never took college courses. (*Id.*) Gibbs corrected this in the 2016 Life Care Plan and noted that Plentyhawk never enrolled in college courses. (Doc. 78-1 at 4)

In addition, Gibbs stated in the 2014 Life Care Plan that Plentyhawk lived in Lodge Grass, Montana. (Doc. 78-2 at 3, 24.) Gibbs correctly stated in the 2016 Life Care Plan that Plentyhawk lives in a rented second-story apartment in Billings that is only accessible by two flights of stairs. (Doc. 78-1 at 27.) Gibbs noted that Plentyhawk relocated from Lodge Grass to Billings in late 2014. (*Id*) Because Plentyhawk's current condition makes it dangerous to use stairs exclusively, Gibbs opined that Plentyhawk should move to a wheelchair-accessible apartment. (Doc. 78-1 at 40.) Gibbs had access to information that Plentyhawk moved to Billings prior to the October 2015 expert disclosure deadline. As noted above, Plentyhawk moved to Billings in late 2014, and Plentyhawk provided his Billings address at his deposition in August 2015. (*Plentyhawk Depo. 6:10-15*, Doc. 78-3 at 2.)

Finally, the 2014 Life Care Plan did not provide Plentyhawk's income in 2010, but provided income information from 2004, 2007-2009, and 2011-2012. (Doc. 78-2 at 42.) Gibbs stated that Plentyhawk was unemployed in 2010. (*Id.*)

4

In the 2016 Life Care Plan, Gibbs stated that Plentyhawk earned $11,364 in 2010. (Doc. 78-1 at 49.) Gibbs did not explain this correction, but noted in Appendix A that he reviewed a letter drafted on November 6, 2015, by the Montana Department of Revenue. (*Id.* at 56.)

The Doctors point to other additions found in the 2016 Life Care Plan. However, the Court is unable to determine whether Gibbs based the new additions on previously unavailable information. For example, the Doctors point to Gibbs's claim in the 2016 Life Care Plan that Plentyhawk is willing to undergo a lumbar fusion procedure. (Doc. 78-1 at 35.) While Plentyhawk's willingness to undergo a lumbar fusion is not found in the 2014 Life Care Plan, Gibbs based that assertion on a conversation he had with Plentyhawk on February 22, 2016. (*Id.*) Further, Gibbs indicated in the 2014 Life Care Plan that Plentyhawk will likely need to undergo a lumbar fusion later in life, so the Doctors were already aware of the issue. (Doc. 78-2 at 32.) Further, the Doctors point to the new statement in the 2016 Life Care Plan that Plentyhawk uses Canadian crutches to ambulate. (Doc. 78-1 at 24.) On the record before it, the Court cannot tell whether Gibbs could have known this information prior to the expert disclosure deadline or whether this is a new development.

Dr. Dulaney also drafted a new report on March 21, 2016 ("Dr. Dulaney's 2016 Report"). Dr. Dulaney's overall loss calculations changed in his 2016

5

Report. These changes are due to the new information contained in the 2016 Life Care Plan. Dr. Dulaney's figures are different due to the changed information, but his methodology remained the same.

The Doctors deposed Gibbs on March 9, 2016, and Dr. Dulaney on March 29, 2016. The Doctors were able to question Gibbs and Dr. Dulaney about their new reports. The Doctors now move to strike the 2016 Life Care Plan and Dr. Dulaney's 2016 Report.

## II. Analysis

The Doctors argue that Gibbs's and Dr. Dulaney's new reports constitute improper supplementation. The Doctors point out that a number of the additions and corrections were based on information that was accessible to Plentyhawk and his experts prior to the expert disclosure deadline. According to the Doctors, the new reports are improper attempts to supplement the timely-disclosed reports. The Doctors argue that this Court should sanction Plentyhawk for these untimely additions and corrections and strike the new reports. Alternatively, the Doctors request leave to have their experts update their own reports. In response, Plentyhawk uses the term "frivolous" six times in describing the Doctors' motion. Plentyhawk argues that damages expert reports are "living documents" that are modified based on changing circumstances. Plentyhawk contends that including

6

the new information was not only permissible, but was required by Fed. R. Civ. P. 26(e).

### A. Supplementation under Fed. R. Civ. P. 26(e)

A court may establish deadlines for the parties to disclose expert testimony. Fed. R. Civ. P. 26(a)(2)(D). After the expert disclosure deadlines passes, a party must supplement or correct an expert disclosure "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). While Rule 26(e) requires supplementation of expert reports upon discovery of new information, Rule 26(e) "does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report." *Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 639 (D. Haw. 2008) (quotation omitted).

Here, the Court finds the 2016 Life Care Plan and Dr. Dulaney's 2016 report contain additions and corrections that are not proper supplementation under Rule 26(e). In the 2016 Life Care Plan, Gibbs includes information that was easily accessible and known to Plentyhawk prior to the October 2015 expert disclosure deadline. Plentyhawk knew at the time of the 2014 Life Care Plan that he did not take university courses. While Gibbs may have misunderstood some information

7

relayed to him, Plentyhawk or his counsel had ample time to correct mistakes prior to the expert disclosure deadline. Similarly, Gibbs had access to information that Plentyhawk moved to Billings and lived in a non-handicap accessible apartment well in advance of the expert disclosure deadline. The Court is unaware if anybody relayed this information to Gibbs, but this fact was known prior to the expert disclosure deadline. Gibbs also could have known Plentyhawk was employed in 2010 and had earned some income. While Plentyhawk may not have known exactly how much he made, he had access to that information prior to the disclosure deadline. Finally, the expanded "Future Employment" section in the 2016 Life Care Plan does not contain any new information, but rather bolsters the conclusions that Gibbs made in the 2014 Life Care Plan. Since this section does not include newly discovered information, it was not proper supplementation.

The Court is not persuaded by Plentyhawk's argument that disclosures by damages experts are "living documents" that can be added to on a continuing basis. Treating expert disclosures in this fashion "would surely circumvent the full disclosure requirement implicit in Rule 26 and would interfere with the Court's ability to set case management deadlines, because new reports and opinions would warrant further consultation with one's own expert and virtually require new rounds of depositions." *Beller ex rel. Beller v. United States*, 221 F.R.D. 689, 695 (D.N.M. 2003). "[A] party may not rely on supplementation as a way to remedy a

8

deficient expert report or as a means of getting in, in effect, a brand new report." *Rojas v. Marko Zaninovich, Inc.*, 2011 WL 4375297, at *6 (E.D. Cal. Sept. 19, 2011) (quotation omitted). A complete expert disclosure, based on current information as best known by the party, should be submitted to the opposing parties by the expert disclosure deadline.

In this case, Gibbs had access to correct information well in advance of the expert disclosure deadline. If Gibbs somehow misunderstood information relayed to him, either Plentyhawk or his counsel had plenty of time to notify Gibbs of the correct information. Since Plentyhawk failed to ensure that Gibbs and Dr. Dulaney updated the reports prior to the expert disclosure deadline, the Court finds Plentyhawk did not act in a timely manner and improperly supplemented portions of the 2016 Life Care Plan and Dr. Dulaney's 2016 Report.

Specifically, the Court finds following information should have been included in a timely disclosed report: (1) Plentyhawk's academic history regarding college courses; (2) Plentyhawk's relocation to Billings; (3) Plentyhawk's 2010 income data; and (4) the "Future Employment" portion of the 2016 Life Care Plan. The correct information should have been included in the experts' reports disclosed by the date set by the Court pursuant to Rule 26(a)(2)(D).

**B. Sanction under Fed. R. Civ. P. 37(c)(1)**

Given the Court's finding that Plentyhawk violated Rule 26(a) and (e), the Court must impose an appropriate sanction under Rule 37(c)(1). *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (Rule 37(c)(1) "gives teeth" to the requirements of Rule 26). Rule 37(c)(1) provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> **(A)** may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> **(B)** may inform the jury of the party's failure; and
>
> **(C)** may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

While Rule 37(c)(1) explicitly allows a court to prohibit the use of untimely disclosed expert reports, the rule also allows less drastic sanctions, including the "payment of the reasonable expenses" caused by the failure to comply with Rule 26. Fed. R. Civ. P. 37(c)(1)(A). District courts are afforded "particularly wide latitude" in determining an appropriate sanction. *Yeti by Molly*, 259 F.3d at 1106. A district court may weigh the following factors when deciding whether to strike an expert's report:

> (1) the public's interest in expeditious resolution of litigation, (2) the court's need to manage its docket, (3) the risk of prejudice to the other parties, (4) the public policy favoring disposition of cases on their merits, and (5) the availability of less drastic sanctions.

*Jackson v. United Artists Theatre Circuit, Inc.*, 278 F.R.D. 586, 594 (D. Nev. 2011).

The Court concludes that striking the 2016 Life Care Plan and Dr. Dulaney's 2016 Report would be too severe of a sanction given the circumstances. First, the public's interest in expeditious resolution of litigation is not impacted by the late disclosures. A trial date has not been set, and the deadline to file pretrial motions is July 1, 2016. (Doc. 98.) It appears that no deadline would need to be reset by affording the Doctors' experts an opportunity to update their reports in light of the new information. Similarly, the court's need to manage its docket is minimally impacted.

The only prejudice alleged by the Doctors is the cost associated with updating their own expert reports. The Doctors received the 2016 Life Care Report and Dr. Dulaney's 2016 Report prior to the experts' depositions, and the Doctors were able to question the experts extensively about the new reports. The Doctors should not be surprised at trial by the experts' conclusions, nor could the reports alter their trial prep or strategy. The Court also notes that the revisions to the 2016 Life Care Plan and Dr. Dulaney's 2016 Report are relatively minor. Gibbs and Dr. Dulaney did not alter their methodology or present vastly changed

11

opinions. The main differences between their timely and untimely reports were updated information.

The policy favoring disposition on the merits weighs against striking the reports. The Court prefers not to create a legal fiction at trial, where Gibbs and Dr. Dulaney would be prohibited from discussing correct information. The jury should be allowed to weigh the entirety of Plentyhawk's experts' opinions. Finally, there are less drastic sanctions that could remedy the violation of Rule 26.

In weighing the above factors, the Court elects to impose the lesser sanction of requiring Plentyhawk to pay the fees incurred by the Doctors' experts if they are required to update their own reports. This sanction is contemplated by Rule 37(c)(1)(A) and fixes the only prejudice suffered by the Doctors. The Doctors paid their experts to respond to Gibbs's and Dr. Dulaney's timely disclosed reports. If the original expert reports contained the correct information, the Doctors may have been able to pay their experts to supply only one report. However, given that Plentyhawk's experts did not include all the correct information, the Doctors have to pay their experts again to respond to the new reports. The Court finds that a fair remedy is to require Plentyhawk to pay this expense that could have been avoided had his experts updated their reports with timely information before the expert disclosure deadline.

## III. Conclusion

Accordingly, IT IS HEREBY ORDERED:

1. The Doctors' Motion to Strike Plaintiff's Supplemental Expert Reports (Doc. 77) is GRANTED as to the finding that Plentyhawk violated Rule 26, but DENIED as to the requested sanction of striking the expert reports.

2. The Court grants the Doctors leave to have their respective life care planning and economic loss experts review Plentyhawk's supplemental expert reports and issue any new reports they deem necessary. Plentyhawk shall pay the cost associated with the issuance of any updated reports.

DATED this 31st day of May, 2016.

SUSAN P. WATTERS
United States District Judge